**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ARMANDO GARCIA DE LA CRUZ,** | ) | |
| **20179-047,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:14-CV-3846-D** |
| | ) | **(Consolidated with** |
| **WARDEN MAUREEN CRUZ, ET AL.,** | ) | **3:14-CV-4439-D)** |
| **Defendants.** | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the District Court, this case has been referred to the United States Magistrate Judge. The findings, conclusions and recommendation of the Magistrate Judge follow:

**I. Background**

Plaintiff is a federal prisoner confined in the Federal Correctional Institution (FCI) - Seagoville in Seagoville, Texas. On June 10, 2014, he filed this complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in the United States District Court for the District of Nebraska. On August 12, 2014, the Nebraska District Court granted Plaintiff's motion to proceed *in forma pauperis*.

On September 22, 2014, the Nebraska District Court noted that Plaintiff had sued the United States, the Federal Bureau of Prisons and more than thirty known and unknown individuals employed at five different federal correctional facilities, but none of the events described in the complaint occurred in Nebraska, none of the defendants resided in Nebraska and Plaintiff was not confined in Nebraska. The Nebraska District Court transferred the case to the

**Findings and Conclusions of the**
**United States Magistrate Judge**                    Page -1-

Norther District of Texas, where Plaintiff is currently confined.

On November 4, 2014, the undersigned Magistrate Judge determined that Plaintiff raised claims regarding his treatment at (1) FCI-Terminal Island in San Pedro, California; (2) the Federal Transfer Center in Oklahoma City, Oklahoma; (3) FCI-Safford in Safford Arizona; (4) FCI-Phoenix in Phoenix, Arizona; and (5) FCI-Seagoville in Seagoville, Texas.  The Court retained jurisdiction over the claims arising at FCI-Seagoville and transferred Plaintiff's claims regarding his treatment at FCI-Terminal Island to the United States District Court for the Central District of California, transferred Plaintiff's claims regarding his treatment at the Federal Transfer Center to the United States District Court for the Western District of Oklahoma, and transferred Plaintiff's remaining claims regarding his treatment at FCI-Safford and FCI-Phoenix to United States District Court for the District of Arizona.

On December 17, 2014, the United States District Court for the Western District of Oklahoma transferred its case back the Northern District of Texas finding the Court's order did not cite Fed. R. Civ. P. 21 in severing the claims and did not analyze the Rule 21 factors in determining whether to sever.  This Court opened the returned case as cause number 3:14-CV-4439-L and on December 22, 2014, consolidated that case with the instant complaint.

In this complaint, Plaintiff sues former FCI-Seagoville Warden Maureen Cruz, current FCI-Seagoville Warden Eddy Mejia, FCI-Seagoville Assistant Warden John Doe, FCI-Seagoville employees Dr. Jaffe, Medical Director Ronda Hunter, Dr. J. Capps and Dr. A. Duckworth, the United States, the Bureau of Prisons ("BOP"), Oklahoma Transfer Center Warden John Doe, Oklahoma Transfer Center Assistant Warden John Doe, and Oklahoma Transfer Center

**Findings and Conclusions of the**
**United States Magistrate Judge**          Page -2-

employees Psychology Specialist Katie Freeman, Physician's Assistant Carlos Mier, Staff

Psychologist Amy Mayberry Hollis, Psychologist Yselda Yanez and Dr. Tom Goforth.

Plaintiff claims the Defendants violated his Eighth Amendment right to be free from cruel

and unusual punishment by failing to adequately provide for his serious medical needs.  He seeks

money damages and life-long medical care.

## II.  Screening

Plaintiff's complaint is subject to preliminary screening under 28 U.S.C. § 1915A.  That

section provides in pertinent part:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil
> action in which a prisoner seeks redress from a governmental entity or officer or
> employee of a governmental entity [and] [o]n review, the court shall identify cognizable
> claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is
> frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2)
> seeks monetary relief from a defendant who is immune from suit.

28 U.S.C. § 1915A(a) and (b).

Under 28 U.S.C. § 1915(e), a district court may also summarily dismiss a complaint filed

*in forma pauperis* if it concludes the action is : (1) frivolous or malicious; (2) fails to state a

claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is

immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  To state a claim upon which relief may be

granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its

face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts

with enough specificity "to raise a right to relief above the speculative level . . . ."  *Id*. at 555.  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged.*"  Ashcroft v.*

*Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

## III.  Discussion

### A.        Maureen Cruz

Defendant Maureen Cruz is the former warden of FCI-Seagoville.  In Plaintiff's responses to the Magistrate Judge's Questionnaire ("Questionnaire"), he does not allege any claims against this Defendant and states "[t]his Defendant may be removed from this suit at this time . . . ."  (Questionnaire Resp. at 1.)  This Defendant should therefore be dismissed.

### B.        Dr. Jaffe and Assistant Warden John Doe

Although the Magistrate Judge's Questionnaire instructed Plaintiff to state all facts and claims he was alleging against Defendants Dr. Jaffe and Assistant Warden John Doe, Plaintiff failed to make any allegations against these Defendants.  (Questionnaire 1C and D.)  These Defendants should therefore be dismissed.

### C.        Warden Eddy Mejia, Dr. Capps, Dr. Duckworth and Ronda Hunter

Plaintiff claims Defendants Dr. Capps, Dr. Duckworth and Medical Director Ronda Hunter failed to provide him with appropriate medical care, and that Warden Mejia was aware of the inadequate medical care but took no action on Plaintiff's complaints.

Plaintiff's denial of medical care claim is governed by the "deliberate indifference" standard of the Eighth Amendment to the United States Constitution.  U.S. CONST. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  To establish a constitutional violation, Plaintiff must show that prison officials acted with deliberate indifference to his medical needs such as to cause the "unnecessary or wanton infliction of pain."  *Id*. 429 U.S. at 106.  This requires proof

**Findings and Conclusions of the**
**United States Magistrate Judge**        Page -4-

that defendants were subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk. *Hare v. City of Corinth*, 74 F.3d 633, 649 (5th Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

The record shows that in 2003 Plaintiff was involved in a motor vehicle accident that resulted in a spinal injury. (Questionnaire Resp. at 59.)  He is confined to a wheelchair and has little control of his bowels and bladder. (*Id*. at 22.)

On July 26, 2012, Plaintiff arrived at FCI-Seagoville after being transferred from the Oklahoma Transfer Center.  Plaintiff claims that upon his arrival, Dr. Duckworth and Dr. Capps failed to provide him with pain medication for three months. (*Id*. at 3.)  However, Plaintiff also states that upon arrival at FCI-Seagoville, Defendants provided him with "minimal pain medication," rather than no pain medication. (*Id*. at 5.)  Plaintiff also submitted the prison's two responses to his complaint.  The November 16, 2012 response states:

> [Y]ou arrived at FCI Seagoville on July 26, 2012.  You reported to Health Services on August 3, 2012.  At that time you were receiving several medications including pain medication.  Medical staff recommended an MRI and a neurological evaluation be scheduled.  You returned to Health Services on August 10, 2012 at which time additional paid medication was prescribed.  You returned to Health Services and reported additional pain for which you were again prescribed pain medication.  An MRI was completed on August 23, 2012.  You were seen by a Neurologist on September 10, 2012.  The examination showed tenderness and you were treated with an injection for pain.

(*Id*. at 11.)  The April 8, 2013 response states:

> You arrived at FCI Seagoville on July 26, 2012.  You were evaluated for a chronic care encounter on August 3, 2012, at which time your condition was noted to have declined. As a result, you were prescribed narcotic pain medication, lab work was ordered, and neurology as well as radiology consultation was initiated.  The radiology consultation for a lumbar and thoracic spine Magnetic Resonance Imaging (MRI) study was approved and completed on August 23, 2012.  You were evaluated by a neurologist on September 10, 2012.  After an examination you were given a steroid pain injection to your left sacroiliac

joint.  Recommendations were received for an electromyogram (EMG) and nerve
conduction study.  Additionally, prescriptions were received for baclofen an tegretol.

(*Id*. at 13-14.)

Although Plaintiff has characterized his pain medication as "minimal," he has failed to

dispute the specific instances of pain medications or pain injection.  He has failed to show

Defendants were deliberately indifferent to his serious medical needs.

Plaintiff also claims Defendants failed to provide him a diagnostic myleography injection

test as recommended by Dr. Russell Kenneth at Texas Health Presbyterian Hospital.  The

prison's April 8, 2013 response to this complaint states:

> A neurology consultation for EMG and nerve conduction was approved and completed on
> December 17, 2012.  It was determined that the lumbar spine MRI was inconclusive and
> you would benefit from a myelogram and post myelogram post Computed Tomography
> (CT) scan as well as a muscle and nerve biopsy.  Neurology consultations were initiated
> for the recommended diagnostic examinations which have been approved and are
> currently pending scheduling.

(*Id*. at 13.)  On April 19, 2013, one of the diagnostic injection procedures was completed.  (*Id*. at

30.)  The record shows that a myleography test was approved and as of April 8, 2013 was being

scheduled.  If the myleography test was not conducted, Plaintiff has failed to show that the failure

to provide this test was a violation of his Eighth Amendment rights.  Dr. Kenneth's August 23,

2012, report states Plaintiff was provided a thoracic spine MRI with and without contrast, and a

lumbar spine MRI with and without contrast.  (*Id*. at 31-32.)  He does not state that a

myleography test was medically necessary, only that his examination showed damage to

Plaintiff's spinal cord "could be due to either an arachnoid cyst that is not directly visible, or a

prior traumatic cord injury.  Myelography is the best test for showing an arachnoid cyst."  (*Id*.)

**Findings and Conclusions of the**
**United States Magistrate Judge**          Page -6-

Plaintiff has further failed to show how he was harmed if he did not have this test.  He has failed to show Defendants violated his Eighth Amendment rights.

Plaintiff claims Defendants were indifferent to his serious medical needs when they failed to provide him with physical therapy.  Plaintiff states that on May 6, 2013 when he was examined at the Western Institute of Neurology, Dr. Ahmed Elsehety "approved and ordered" physical therapy for him.  The documents Plaintiff submitted, however, show that Dr. Elsehety stated Plaintiff "may require physical therapy for 3 times weekly for 6 weeks." (*Id*. at 27.)  This document states only that Plaintiff "may" require therapy, but it does not show that therapy was ordered or medically necessary.  Plaintiff has failed to show a violation of his Eighth Amendment rights.

Plaintiff claims Defendants failed to provide him with "ordered and approved" shin braces.  Plaintiff, however, admits in his pleadings that he was provided these shin braces.  He states he was given the braces on June 21, 2012, but they needed "extensive retrofitting." (Compl. at 16.)  He admits that on February 1, 2013, the FCI-Seagoville Defendants provided him with the retrofitted braces.  ( *Id*.) ("It would be nearly four years after the prescription of the AFO devices – on 2.1.2013 – that I would finally be issued the devices in working order.") Further, In response to his grievance, BOP responded on April 8, 2013 as follows:

> You are appealing the Warden's response to your complaint regarding medical care. Specifically, you allege you are suffering continued physical deterioration because you were not provided an ankle foot orthosis (AFO) brace.  You request money compensation, pain medication, AFO brace, an evaluation by a specialist and surgery.
>
> A review of your electronic medical records revealed you have a history of cauda equine syndrome.  While you were housed at the Federal Correctional Institution (FCI) in San Pedro, California, you were issued bilateral custom molded articulating AFO braces on

**Findings and Conclusions of the**
**United States Magistrate Judge**          Page -7-

April 29, 2010.  However, on January 12, 2012, you were evaluated by a prosthetic/orthotic specialist for adjustments to your braces which were not completed prior to your transfer.  You were evaluated by an orthopedic specialist; however, there was no recommendation for surgery.  **Additionally, you have been provided bilateral AFO braces.**

\* \* \*

(Questionnaire Resp. at 13-14) (emphasis added).  This April 8, 2013, response is consistent with

Plaintiff's admission that on February 1, 2013, the FCI-Seagoville Defendants provided him the

braces in working order after the retrofitting was completed.  Plaintiff has failed to show a

violation of his Eighth Amendment rights.

Plaintiff 's spinal condition requires him to use a wheelchair.  He states he asked

Defendants to provide him a wheelchair with shock absorbers to alleviate his pain, but that

Defendants "simply laughed" at his request.  (Questionnaire Resp. at 2.)  The record shows

Plaintiff was provided a wheelchair and was provided three pillows to be used with the

wheelchair.  (*Id*. at 29.)  Although he complains of the delay in receiving pillows, he has not

alleged that the pillows were prescribed as medically necessary for his condition, only that he

requested the pillows.  Plaintiff has also failed to show that a wheelchair with shock absorbers

was medically necessary or that these Defendants were deliberately indifferent to his medical

needs.

**D.      Defendants United States and BOP**

Plaintiff lists the United States and the BOP as Defendants.  A *Bivens* action,

however, only provides a remedy for victims of constitutional violations by government officials

in their individual capacities.  It does not provide for a cause of action against the United States

**Findings and Conclusions of the**
**United States Magistrate Judge**          Page -8-

or a federal agency.  *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999); *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994).  Plaintiff claims against these Defendants should therefore be dismissed.

**E.      Oklahoma Defendants**

**1.      June 21 and July 26, 2012 Claims**

Plaintiff alleges that on June 21 and July 26, 2012, Oklahoma Transfer Center employees John Doe Warden, John Doe Assistant Warden, Psychology Specialist Katie Freeman, Psychologist Amy Mayberry Holis, Psychologist Yselda Yanez and Dr. Goforth ignored his reports of pain and violated his medical restrictions when transferring him to FCI-Seagoville.  He claims his medical restrictions require that he not be seated for over forty-five minutes at one time, but that these Defendants placed him on a multiple-hour bus ride to FCI-Seagoville, which he alleges exacerbated his medical condition.

The Court finds these claims against these Defendants should be severed from this action pursuant to Fed. R. Civ. P. 21 and transferred to the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 1406(a).

Under Fed. R. Civ. P. 21, the Court may *sua sponte* sever any claim against any party. Courts consider the following factors in determining whether to sever claims under Rule 21: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some commons questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance was granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *Johnson*

**Findings and Conclusions of the**
**United States Magistrate Judge**          Page -9-

*v. BAE Systems Land & Armaments, L.P.*, 2014 WL 1714487 at *35-36, No. 3:12-CV-1790-D-BH  (N.D. Tex. Apr. 30, 2014) (citing *Morris v. Northrop Grumman Corp.*, 37 F. Supp.2d 556, 580 (E.D.N.Y. 1999) and *Aspen Tech., Inc. v. Kunt*, 2011 WL 86556, at *2 (S.D. Tex. Jan. 10, 2011)).

In this case, the claims arising from these Defendants' alleged actions in Oklahoma do not arise from the same transaction or occurrence as the claims Plaintiff raises regarding incidents at FCI-Seagoville.  Plaintiff's claims involve decisions and actions by these Oklahoma Defendants that occurred in Oklahoma and will involve witnesses, facts and evidence that differ from his claims arising from FCI-Seagoville.  Further, severance may avoid prejudice in this case since, as discussed below, venue in the Northern District of Texas is improper under 28 U.S.C. § 1391(a).  The Court therefore recommends severance of these claims.[1]

The Court also finds that venue of these claims is improper in the Northern District of Texas.  Title 28 U.S.C. § 1391(a) governs venue of a federal cause of action.  That statute states in pertinent part:

A civil action may be brought in –

(1)     a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)     a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

_____

[1]Where claims are properly severed, the severed claims become a separate action and may be transferred under 28 U.S.C. §§ 1404 and 1406.  *See Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (5th Cir. 1968); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1519 (10th Cir. 1991).

**Findings and Conclusions of the**
**United States Magistrate Judge**          Page -10-

(3)    if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

The events and actions underlying Plaintiff's claims occurred in the Western District of Oklahoma. Further, each of the Oklahoma Defendants is employed at the Oklahoma Transfer Center in Oklahoma City. It is therefore likely that all of these Defendants reside in the State of Oklahoma. Consequently, under § 1391(a)(1) and (2) venue is improper in the Northern District of Texas. Further, § 1391(a)(3) does not apply, since these claims could have been brought in the Western District of Oklahoma. *See Employers Mutual Casualty Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 n.10 (10th Cir. 2010) ("Under § 1391(a)(3), venue is not proper because EMC could have brought the declaratory judgment action in the District of Utah."); *Beasley v. Krafcisin*, 2014 WL 4651996, at *3, No. 3:13-CV-4972-M (N.D. Tex.) ("[V]enue can be based on this subsection only 'if there is no district in which the action may otherwise be brought.'"). Venue in the Northern District of Texas is therefore not proper.

Where an action is brought in the improper venue, the court shall dismiss the action, or "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Court finds that in the interest of justice, these claims should be transferred to the Western District of Oklahoma rather than dismissed so that Plaintiff may retain his original filing date of these claims. The Court therefore recommends transfer of these claims to the United States District Court for the Western District of Oklahoma.

**2.    2006 and 2007 Claims**

Plaintiff claims that on April 19 and July 21, 2006 and on September 12, 2007, Oklahoma

Transfer Center employees ignored his medical complaints in violation of his Eighth Amendment

rights.  He claims that because these employees ignored his medical complaints on September

12, 2007, this led to "the partial parapelegia I now suffer."  (Compl. at 13.)

As discussed above, the Northern District of Texas is an improper venue for these claims.

It also appears, however, that the claims are barred by the statute of limitations.  Plaintiff's

claims under § 1983 are governed by a two-year statute of limitations.  *See Owens v. Okure,* 488

U.S. 235, 250 (1989) (stating federal court should look to general personal injury limitations

period of forum state); *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011) (stating the

Oklahoma personal injury limitations period is two years).  Under federal law, a "cause of action

accrues, so that the statutory period begins to run, when the plaintiff knows or has reason to

know of the injury which is the basis of the action."  *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th

Cir. 1998).  The Court finds Plaintiff knew, or should have know, of his claims in 2006 and 2007

when the claims occurred, but failed to raise these claims until June 10, 2014.  Plaintiff has also

failed to allege circumstances warranting equitable tolling of the limitations period.  *SeeYoung v.

Davis*, 554 F.3d 1254, 1258 (10th Cir. 2009).  This Court therefore finds that the interest of

justice does not support transferring these claims to the Western District of Texas, and the Court

recommends that these claims be dismissed for improper venue.

**F.      Motions to Amend**

On February 20, 2015, Plaintiff filed a motion to amend his complaint.  He seeks to add

as Defendants the John Doe BOP employees who transported him from Oklahoma City to FCI-

Seagoville on March 28, 2012.  On February 26, 2015, Plaintiff filed another motion to amend

his complaint.  He seeks to add as Defendants the John Doe BOP employees who transported him from California to Oklahoma City in June or July, 2012 and again moves to add the John Doe BOP employees who were in charge of transported him from Oklahoma City to FCI-Seagoville on March 28, 2012.

### 1.   March 28, 2012 Transfer

Plaintiff seeks to sue BOP employees who transported him from Oklahoma City to FCI-Seagoville on March 28, 2012.  He claims these employees were deliberately indifferent to his serious medical needs and failed to provide him safe transport in violation of § 1983 and the Americans with Disabilities Act ("ADA").

In Texas, a civil rights action under 42 U.S.C. § 1983 and an action under the ADA are governed by a two-year statute of limitations.  *See Ali v. Higgs*, 892 F.2d 438, 439 (5th Cir. 1990) (finding § 1983 limitations period in Texas is two years); *Brockman v. Tex. Dept. Of Criminal Justice*, 397 Fed. Appx. 18, 21 (5th Cir. 2010) (finding ADA limitations period in Texas is two years).

Plaintiff attempts to sue for actions taken on March 28, 2012, which occurred more than two years prior to his filing this complaint on June 10, 2014.  Plaintiff knew or had reason to know of his claims on March 28, 2012, but has failed to show why these claims were not timely filed.  These claims are therefore barred by limitations.  Plaintiff's motion to amend the complaint to add these claims should be denied because the amendment would be futile.

### 2.   June or July 2012 Transfer

On February 26, 2015, Plaintiff filed a motion to add as Defendants the John Doe BOP

**Findings and Conclusions of the**
**United States Magistrate Judge**         Page -13-

employees who transported him from California to Oklahoma City in June or July, 2012.

Plaintiff, however, has failed to show that venue in the Northern District of Texas is proper.  He

has failed to show that any of the acts underlying these claims occurred in the Northern District

of Texas, that any of these Defendants are residents of the state of Texas or that any of these

Defendants are subject to this Court's personal jurisdiction.  Plaintiff's motion to amend the

complaint to add these Defendants should be denied.

**G.     Motion for Injunction**

On December 1, 2014, Plaintiff filed a motion for injunction asking the Court to order the

BOP to comply with the ADA when transporting and transferring him between facilities.

To be entitled to an injunction, the applicant must show (1) a substantial likelihood of

success on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction

is not granted, (3) his substantial injury outweighs the threatened harm to the other party, and (4)

granting the injunction will not disserve the public interest.  *Bluefield Water Ass'n, Inc. v. City of*

*Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009).

In this case, Plaintiff cannot show a substantial likelihood of success on the merits

because his claims for relief are not ripe.  A claim is not ripe for review if "it rests upon

contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas*

*v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

Plaintiff has not alleged that the BOP has currently ordered his transfer to another facility,

and has not shown that any future transfer will violate the ADA.  Plaintiff's motion for an

injunction should therefore be denied

**Findings and Conclusions of the**
**United States Magistrate Judge**          Page -14-

**RECOMMENDATION**

The Court recommends that: (1) Plaintiff's claims against Defendants Maureen Cruz, Dr. Jaffe, FCI-Seagoville John Doe Assistant Warden, Eddy Mejia, Dr. Capps, Dr. Duckworth, Ronda Hunter, the United States and the BOP be dismissed pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2); (2) Plaintiff's June 21 and July 26, 2012 claims against Oklahoma Transfer Center employees John Doe Warden, John Doe Assistant Warden, Psychology Specialist Katie Freeman, Psychologist Amy Mayberry Hollis, Psychologist Yselda Yanez and Dr. Goforth be severed pursuant to Fed. R. Civ. P. 21 and transferred to the United States District Court for the Western District of Oklahoma pursuant to 28 U.S.C. § 1406(a); (3) Plaintiff's remaining claims against Oklahoma Transfer Center employees John Doe Warden, John Doe Assistant Warden, Psychology Specialist Katie Freeman, Psychologist Amy Mayberry Hollis, Psychologist Yselda Yanez and Dr. Goforth be dismissed without prejudice for improper venue; (4) Plaintiff's motions to amend the complaint be denied; and (5) Plaintiff's motion for injunction be denied.

Signed this 11th day of March, 2015.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**Findings and Conclusions of the**
**United States Magistrate Judge**          Page -15-

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).